Vaughn Fisher, ISB No. 7624
Rebecca A. Rainey, ISB No. 7525
Nicholas A. Warden, ISB No. 9179
FISHER RAINEY HUDSON
950 W. Bannock St., Ste. 630
Boise, ID 83702
Telephone: (208) 345-7000
Facsimile: (208) 514-1900
rar@frhtriallawyers.com
naw@frhtriallawyers.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALMA PLUCINSKI,<br><br>               Plaintiff,<br><br>vs.<br><br>PAYETTE COUNTY; PAYETTE COUNTY BOARD OF COMMISSIONERS; PAYETTE COUNTY PLANNING AND ZONING COMMISSION; CHAD HENGGELER in his official and individual capacity; BERT OSBORN in his official and individual capacity; GARRY TOTH in his official and individual capacity; and DOES I-X,<br><br>               Defendants. | Case No.: 1:16-cv-00153-CWD<br><br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

COMES NOW, Alma Plucinski (aka Alma Hasse (hereinafter "Hasse" or "Plaintiff"), by and through her counsel of record, FISHER RAINEY HUDSON, and hereby submits this Memorandum in Opposition to Motion for Summary Judgment as follows:

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT - 1**

## I.        INTRODUCTION

It is undisputed that Hasse was arrested at a public meeting on October 9, 2014, and that she spent the next seven nights in jail.  The question is, "Why?"  The Defendants would have you believe Hasse's arrest and detention are entirely of her own making.  However, the record reveals that Hasse was the target of a coordinated attack on her credibility because of who she is and what she believes.  When she tried to defend herself, she was arrested and detained without probable cause.  After her arrest, the local prosecutor provided the arresting officer false information about what happened before her arrest.  The officer used that information to create a false affidavit of probable cause that was written to make it seem as if he had witnessed the events that did not occur.  The County then used policies of extended detention and the denial of privileges to coerce completion of the jail's booking procedures.  Hasse was prosecuted, but the charges against her were eventually dismissed.  For these reasons, set forth in greater detail below, a genuine disputes of fact exist that preclude summary judgment as to Plaintiff's claims.

## II.       STANDARD OF REVIEW

Defendants have adequately stated the standard of review applicable to motions for summary judgment.

## III.      ARGUMENT

### A.        First Amendment

**1.       Restrictions on speech must be viewpoint neutral.**

Payette County Planning and Zoning Commission ("Commission") and its officers violated Hasse's First Amendment rights by engaging in viewpoint based enforcement of the rules of decorum.  Plaintiff does not dispute the government's right to place restrictions on speech in a limited public forum.  *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990).  However, it

cannot pick and choose when it wants to follow the rules; it must enforce the rules in a viewpoint neutral manner. *Id.* (citing *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir. 1995). First Amendment rights exist both during and after a public comment period. *See, Norse v. City of Santa Cruz*, 629 F.3d 966, 975–76 (9th Cir. 2010).

### 2. Genuine issues of material fact exist regarding whether Defendants Henggeler and Osborn engaged in viewpoint based enforcement of the rules of decorum.

Summary judgment is improper because genuine issues of material fact exist regarding whether the Commission and its officers engaged in viewpoint based enforcement of the rules of decorum.  The question in this case is whether Hasse was ejected for what she had to say, or when she said it.  Because reasonable minds can differ, the matter must be submitted to a jury.  *See*, *Dehne v. Griffin*, 74 Fed.Appx. 801, 803 (2003) (holding "[u]nder *Kindt*, Dehne's behavior in confronting Griffin was sufficiently disruptive to justify his ejection from the meeting, but only if Griffin was treating Dehne in the same manner as he would have treated other members of the public. Because a reasonable jury could find that Griffin ejected Dehne in order to prevent Dehne from expressing views hostile to Griffin, the grant of summary judgment was erroneous.").

In *Monteiro v. City of Elizabeth*, Monteiro opposed the City budget.  436 F.3d 397, 400 (3d Cir. 2006).  In response, a council member accused Monteiro of distributing false information. *Id*.  Attempting to defend himself, Monteiro interrupted the attack.  *Id*. The council member ruled Monteiro out of order and instructed police to arrest him.  *Id*. at 401.  The jury found that the council member engaged in an impermissible viewpoint based enforcement of the rules of decorum; the Third Circuit upheld:

> Monteiro adduced sufficient evidence at trial from which a reasonable jury could conclude that Perkins-Auguste acted with a motive to suppress Monteiro's speech based upon his opposition to the budget.  The jury . . . heard the stridency of Perkins-Auguste's *ad hominem* attack on Monteiro.  While Monteiro was arguably

> disrupting the proceedings by interrupting her, he was also defending himself from a personal attack. It was Perkins-Auguste who changed the tone of the meeting from a debate about the merits of the budget to a quasi-prosecutorial forum . . . The speed with which she determined to eject Monteiro from the meeting, her failure to consult her fellow council members or negotiate a compromise, and her failure to follow any established procedure could be viewed by a reasonable jury as evidence that Perkins-Auguste's behavior was emotionally charged and motivated by anger and personal animosity, rather than a desire to maintain smooth operation of the meeting. Despite the calm in the meeting room after the recess, Perkins-Auguste persisted in having Monteiro removed, in handcuffs, against his will.

*Id*. at 405. *Monteiro* makes clear that when a public official personally attacks a citizen, and then responds to the citizen's attempt to defend him/herself by ordering the citizen's arrest, reasonable minds could differ as to the public official's motivations: i.e., decorum vs. viewpoint based animosity.

Here, there is sufficient evidence from which a jury could infer that Osborn and Henggeler had Hasse arrested because of animosity toward her viewpoint, not because she was breaching rules of decorum. For months prior to her arrest, Hasse had criticized Henggeler and other Commissioners for failing to disclose conflicts of interest. Facts, ¶¶ 3-4; Warden Dec., ¶ 7, Ex. 5, Deposition of Chad Henggeler ("Henggeler Depo."), at 140-143.

Commissioner Pete Morgan ("Morgan") investigated a comment Hasse made at the September 9, 2014 Commission meeting. Facts, ¶¶ 6-7. Morgan concluded Hasse's comment was false. *Id*. at ¶ 7. On October 7, 2014, the Commissioners met privately and discussed a plan to discredit Hasse publicly to "curtail [Hasse's] incessant misinformation." Facts, ¶¶ 7-8; Warden Dec., ¶ 6, Ex. 4 (emails regarding Hasse testimony from 10/7/14). The Commissioners consulted with Osborn, who recommended they file a police report and prosecute Hasse for felony perjury. *Id*. Osborn suspected the prosecutor would not act on the report, but thought it would be the best

way to discredit her because it would allow the Commissioners to "dismiss out of hand" all of Hasse's testimony, and would send Hasse a message that the Commissioners "know she is not a truthful person". *Id*.

During the October 9, 2014, Commission meeting, the Commission concluded all business on the agenda. Facts, ¶¶ 9-10. However, rather than adjourn the meeting, the Commission broke the rules of parliamentary procedure by taking up a matter not on the agenda: Hasse's testimony from a prior meeting. *Id*. Both Hasse and Henggeler were unable to think of any other time when the accuracy of prior comments made by a member of the public were a subject of deliberations. *Id*. at ¶ 10. Morgan accused Hasse of providing testimony that was "not factual". *Id*. at ¶ 11. Hasse asked "who did you speak to?" *Id*. The Commission ignored her question. *Id*. Morgan then accused Hasse of lying under oath, or "telling the biggest whopper". *Id*. Following "Robert's Rules of Order"[1], Hasse called aloud for a "point of order." *Id*. at ¶¶ 13-14. In breach of "Robert's Rules of Order" the Commission failed to rule on the "point of order" and, instead, Osborn ordered Hasse to leave. *Id*. at ¶ 15. Osborn then asked Henggeler to instruct the Sergeant-at-Arms to "fetch the sheriff" and have Hasse removed. *Id*. Henggeler complied. *Id*. Before the Sergeant-at-Arms returned with an officer, the Commission resumed business and continued to discuss the non-agenda item. *Id*. The Commission did not attempt to negotiate with Hasse or allow her to remain under a condition of silence. *See*, Facts, ¶¶ 15-18. Osborn instructed the police to arrest Hasse. *Id*. at ¶ 17.

---

[1] The Commission follows "Robert's Rules of Order" when conducting its meetings. Warden Dec., ¶ 7, Ex. 5, at 21-22. Under Robert's Rules of Order, a "point of order" allows the interruption of the speaker if there is a procedural violation. Hasse Dec., ¶ 12. The Rules require the presiding Chair to rule on the "point of order" when it is raised. *Id*.

As in *Monteiro*, a Commissioner engaged in a personal attack against Hasse, the order for Hasse's arrest was immediate, and the Commission did not follow established procedure.  Worse than *Monteiro*, however, the Commissioners—who Hasse had criticized for failing to disclose conflict-of-interests—developed a plan to publicly discredit her.  This gives rise to a question of fact regarding whether her removal was based on viewpoint animosity or breaches of the rules of decorum.  *See, Monteiro*, 436 F.3d at 405 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 529 (1985) (improper intent is a pure question of fact); *Walker v. Horn*, 286 F.3d 705, 710 (3d Cir.2002).  There is sufficient evidence from which a reasonable jury could conclude that that the Commission engaged in view-point based enforcement of the rules of decorum.  For this reason, summary judgment as to Plaintiff's First Amendment claim should be denied.

### B.  Fourth Amendment and State Law False Arrest and Imprisonment

**1.  Summary Judgment is improper on Hasse's Fourth Amendment and State Law Claims for False Arrest because Officer Toth did not have probable cause to arrest.**

Genuine issues of material fact regarding whether Officer Toth had probable cause to arrest Hasse preclude summary judgment on Hasse's Fourth Amendment and state law claims for false arrest.  A warrantless arrest is constitutionally valid only if "at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964) (citing *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949); *Henry v. United States*, 361 U.S. 98 (1959). The facts establishing probable cause are viewed from an objective standpoint.  *State v. Julian*, 129 Idaho 133, 136-37, 922 P.2d 1059, 1062-63 (1996).  "[G]ood faith on the part of the arresting officers is not enough." *Henry*, 361 U.S. at 102.  "If subjective good faith alone were the test, the protections of the Fourth

Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." *Id*. The constitutionality of Hasse's arrest turns on whether, at the time of Hasse's arrest, officer Toth knew sufficient facts from which a reasonable officer of similar experience could conclude that Hasse had committed or was committing a crime.

Regarding the state law claim, Toth's arrest of Hasse must be made without malice. "Malice" is defined as the intentional commission of a wrongful or unlawful act, without legal justification or excuse and with ill will, regardless of whether injury was intended. *Anderson v. City of Pocatello*, 731 P.2d 171, 183 (Idaho 1986).

### a. Toth arrested Hasse because Osborn told him to.

Toth did not see any of the events that led to Hasse's arrest. Rather, he arrested Hasse solely and exclusively because Osborn told him to. Following Hasse's arrest, Toth worked with Osborn to get the "facts" that would support his probable cause affidavit.

Toth testified that the incident report he filled out regarding Hasse's arrest is the most accurate and contemporaneous record of what he knew at the time he arrested Hasse. *See*, Warden Dec., ¶ 11, Ex. 10, Deposition of Officer Garry Toth ("Toth Depo."), at 31, 35. The undisputed portions show that he did not have probable cause to arrest her. The incident report reads:

> On October 9, 2014 I was dispatched to the District Court Room 1
> for some kind of a disturbance. At that time there was a public
> meeting of the Payette County Planning and Zoning. When I
> entered the court room I saw a female standing at [t]he back of the
> court room against the north wall. Jailer McDonald was standing
> next to her. Sitting at a table was Attorney Osborn. I met with
> Osborn and asked what needed to be done. He told me that the
> woman needed to leave. I asked Osborn if she did not did he want
> her arrested and he said yes. I met with the woman and asked if she
> would leave the court room and she said no. I told her that she would
> be arrested and she still would not leave. I told the woman she was
> under arrest and placed her in handcuffs.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT - 7**

Warden Dec., ¶ 10, Ex. 9 (Incident Report).  The only facts that establish a violation of section 18-7008 is that Toth told Hasse to leave and she refused.  However, the video shows that did not happen:  Toth did not ask Hasse to leave.   Dkt. 35-2, Declaration of Defendants' counsel ("Stromberg Dec."), ¶ 3, Ex. A (video of arrest).

Moreover, Toth changed his testimony throughout his deposition.  Initially, Toth testified that he relied exclusively on the fact that he told Hasse to leave and she refused.  Warden Dec., ¶ 11, Ex. 10, Toth Depo., at 63-64, 66.  Later, after Toth conferred with counsel, he "clarified" his testimony by stating he relied also on Hasse's refusal to follow Henggeler's order to leave.  *Id*. at 98-100.  This clarification is irrelevant, however, because the video shows that it is also false:  Henggeler did not instruct Hasse to leave.  Dkt. 35-2, Stromberg Dec., ¶ 3, Ex. A (video of arrest).  Rather, the only people who asked Hasse to leave were Attorney Osborn and Jailer McDonald.  *Id*.  Toth did not witness either and does not reference either in his probable cause affidavit, in his deposition testimony, or in his discovery responses.  *See*, Dkt. 35-2, Stromberg Dec., ¶ 3, Ex. A (video of arrest); Warden Dec., ¶ 13, Ex. 12 (probable cause affidavit); Warden Dec., ¶ 11, Ex. 10 (Toth Depo.); Warden Dec., ¶ 15, Ex. 17 (Defendants' Discovery Responses).

   **b.    The record indicates that Toth fabricated probable cause based on false information Osborn provided to him after Hasse's arrest.**

A police officer may make a warrantless arrest for a misdemeanor if the offense is committed or attempted in the officer's presence.  I.C. § 19-603(1).  Toth was aware of this requirement when he arrested Hasse.  Warden Dec., ¶ 11, Ex. 10, Toth Depo., at 58.  After Toth arrested Hasse, he called Osborn to find out why.  Facts, ¶¶ 23-24.  Osborn provided him the story:

>    Osborn: "Chad Henggeler is the witness.  He is the Chairman.  He is the guy who has the authority."

Toth: "And he is the one who asked her to leave and she wouldn't leave?"

Osborn: "Right."

Toth: "Was she just being disruptive?"

Osborn: "She is a spectator and she has the right to testify at a public hearing and she did that . . . I closed the public hearing. I'm in charge of that. I handed the meeting back to Chad Henggeler. He is the Chairman and so he is conducting the meeting of the Planning and Zoning Commission . . . and one of the members was talking and she interrupts and she starts, wants to argue. She raises a point of order. She has no business doing that. She is not a member of the Commission. So I tell her she has no standing to interrupt the meeting, please leave . . ."

Toth: "Chad asked her to be quiet and she didn't."

Osborn: "Correct."

Toth: "He asked her to leave and she didn't."

Osborn: "Correct."

*Id*. at ¶ 24. Idaho Code section 18-7008 requires that the trespassing person refuse an order from an "authorized representative." As Chairman, presiding over the meeting, Henggeler (not Osborn) was the "authorized representative." However, Henggeler did not order Hasse to leave; Osborn did. Facts, ¶ 15. By telling Toth that Henggeler instructed Hasse to leave, Osborn ensured that the story met the statutory elements.

Toth then used Osborn's false information to create a probable cause affidavit:

> **On October 9, 2014 I was dispatched to District Court Room 1, Payette County Courthouse.** At this time the Payette County Planning and Zoning was having an official meeting. The meeting had progressed passed the time of any public [input] and now was being discussed only among the members of the committee. **During this time a female continued to interrupt the meeting and was asked by the Chairman to not interrupt when she refused she was told she needed to leave the courtroom.** The woman refused to leave. I met with the woman in the back of the court room. She

was standing against the north wall.  I told her she needed to leave and she refused.  I met with Burt Osborn who was in the meeting.  Osborn told me that if she did not leave she was to be arrested.  **I arrested the woman on charges of trespassing for she had been told by the chair of the meeting to leave.**

Facts, ¶ 29 (emphasis added).

The video shows that Toth arrested Hasse because Osborn told him to.  Then, to justify the arrest, Toth created a probable cause affidavit based on false information provided by Osborn that made it seem as if Toth personally witnessed events that did not happen.  Osborn's post-arrest fact-revision resulted in the Toth submitting a false probable cause affidavit that was used to justify Hasse's arrest and subsequent detention.  Given that Officer Toth does not know why he arrested Hasse, a reasonable jury can infer that at the time he arrested her, he did so solely because Osborn told him to and that he knew he had no legal authority to do so.  From these facts, a reasonable juror could find officer Toth liable for false arrest under section 1983.  A reasonable juror could also find that Toth's acts were malicious, thereby stating a claim for false arrest under state law.

**2.      Qualified immunity does not shield Toth, Henggeler, or Osborn from liability.**

Qualified immunity protects government officials from civil damage suits for official conduct that does not violate clearly established law of which a reasonable person would have known.  *See, Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[2]  A government official is entitled to qualified immunity if, after construing the facts in a light most favorable to the party alleging injury, the Court concludes either (1) that the facts do not show the defendant's conduct violated

---

[2] The Defendants incorrectly state that the law requires a plaintiff "to identify a case where an employee acting under similar circumstances was held to have violated the constitutional right in question." Dkt. 35-1, pg. 8. The Supreme Court does "not require a case directly on point." *Reza v. Pearce*, 806 F.3d 497, 505 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)); *see also, Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (holding "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

a constitutional right, or (2) that the right was not clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

With regard to Henggeler and Osborn:  There can be no doubt that the Plaintiff's right to be free from viewpoint based restrictions at a public meeting was clearly established as of October 9, 2014.  As stated by the Third Circuit in *Monteiro v. City of Elizabeth*,  "[i]t is clearly established that when a public official excludes . . . a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment."  *Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (2006) (citing *Eichenlaub v. Twp. Of Ind.*, 385 F.3d 274, 281 (3d Cir.2004); *Collison v. Gott*, 895 F.2d 994, 995, 999 (4th Cir.1990); *Jones v. Heyman*, 888 F.2d 1328, 1329 (11th Cir.1989); *Musso v. Hourigan*, 836 F.2d 736, 739 (2d Cir.1988).

"It is also clearly established that . . . viewpoint-based restrictions [on speech in a public forum] violate the First Amendment regardless of whether they also serve some valid time, place, manner interest."  *Monteiro*, 436 F.3d at 404 (citing *Good News v. Milford Cent. Sch.*, 533 U.S. 98, 106-107 (2001); *Rosenberger v. Rector & Visitors of Univ. Of Va.*, 515 U.S. 819, 829 (1995); *Lamb's Chapen v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 392-393 (1993)). Therefore, even if the Plaintiff was arguably being disruptive, if action taken by the Defendants to cure that disruption were motivated by an intent to suppress the Plaintiff's speech on the basis of viewpoint, then the Defendants violated clearly established law and are not entitled to qualified immunity.

Whether the Defendants were motivated by animosity toward the Plaintiff's viewpoint is purely a question of fact.  *See, Monteiro*, 436 F.3d at 405 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 529 (1985) (improper intent is a pure question of fact); *Walker v. Horn*, 286 F.3d 705, 710 (3d Cir.2002).  When qualified immunity depends on disputed issues of fact, those issues are to be

decided by a jury and not the court as a matter of law. *See, Johnson v. Jones*, 515 U.S. 304, 313 (1995) (holding qualified immunity may turn on disputed issues of fact); *Karnes v. Shrutski*, 62 F.3d 485, 491 (3d Cir.1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination."). Accordingly, Henggeler and Osborn are not entitled to qualified immunity.

As to Officer Toth, the constitutional right to be free from arrest without probable cause has been long-established: "Courts have long held that the Fourth Amendment requires probable cause before an officer may arrest an individual." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Toth arrested Hasse because Osborn told him to, not because he witnessed her engaging in unlawful conduct. Therefore, there is an issue of disputed fact regarding whether Toth violated Hasse's constitutional right to be free from arrest without probable cause. *See, Grant v. City of Long Beach*, 315 F.3d 1081, 1089 (9th Cir. 2002). Accordingly, Toth is not entitled to the protections of qualified immunity.

This Court should deny Defendants' request for summary judgment on the grounds of qualified immunity.

**3.    Summary judgment should not be granted as to Plaintiff's false arrest or false imprisonment claims against Toth, Osborn, and Henggeler.**

Defendants Osborn and Henggeler cannot avoid Plaintiff's Fourth Amendment and state law false arrest and false imprisonment claims on the grounds that they did not physically conduct the arrest or engage in the actual detention. Dkt. 35-1, pg. 9. False arrest claims are not restricted to only the arresting officer; anyone participating in bringing about the false arrest is subject to liability:

> A person "subjects" another to the deprivation of a constitutional
> right, within the meaning of section 1983, if he does an affirmative
> act, participates in another's affirmative acts, or omits to perform an

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT - 12**

> act which he is legally required to do that causes the deprivation of
> which complaint is made. Moreover, personal participation is not
> the only predicate for section 1983 liability. Anyone who "causes"
> any citizen to be subjected to a constitutional deprivation is also
> liable. The requisite causal connection can be established not only
> by some kind of direct personal participation in the deprivation, but
> also by setting in motion a series of acts by others which the actor
> knows or reasonably should know would cause others to inflict the
> constitutional injury.

*Lacey v. Maricopa County*, 693 F.3d 896, 915-16 (9th Cir. 2012) (quoting *Johnson v. Duffy*, 588

F.2d 740, 743–44 (9th Cir. 1978); *see also, Starr v. Baca,* 652 F.3d 1202, 1205 (9th Cir.

2011) (holding that an official "need not be 'directly and personally involved in the same way as

are the individual officers who are on the scene inflicting constitutional injury'" to be held liable

as long as "culpable action ... is directly attributed to [him]" (quoting *Larez v. City of L.A.,* 946

F.2d 630, 645 (9th Cir.1991))).  The same standard applies to a false arrest claim under Idaho state

law:  *See* IDJI 4.10; *see also Griffin v. Clark*, 42 P.2d 297, 300-01 (Idaho 1935).

Moreover, an arrest made without probable cause is not extinguished by the initiation of

legal process; the continuing false imprisonment is properly charged to the defendants who brought

about the false arrest.  Contrary to Defendants' position, Judge Lee's orders following Hasse's

unlawful arrest and pre-trial detention (Dkt. 35-1, pg. 12) does not sanitize defendants' wrongful

conduct.

In *Manuel v. City of Joliet, Ill.*, Plaintiff alleged the City violated his Fourth Amendment

rights by arresting him without probable cause and by detaining him for approximately seven

weeks based on false evidence.  137 S. Ct. 911, 916 (2017).  The District Court held that "pretrial

detention following the start of legal process could not give rise to a Fourth Amendment claim"

and dismissed Manuel's challenge to his post-arrest detention. *Id*., (citing *Manuel v. City of Joliet*,

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
- 13**

2014 WL 551626 at *1 (N.D.Ill., Feb. 12, 2014).  The Seventh Circuit agreed (*Id*. at 917), but the

United States Supreme Court overturned, holding:

> … pretrial detention can violate the Fourth Amendment not only
> when it precedes, but also when it follows, the start of legal process
> in a criminal case. The Fourth Amendment prohibits government
> officials from detaining a person in the absence of probable cause .
> . . That can happen when the police hold someone without any
> reason before the formal onset of a criminal proceeding. But it also
> can occur when legal process itself goes wrong—when, for
> example, a judge's probable-cause determination is predicated
> solely on a police officer's false statements. Then, too, a person is
> confined without constitutionally adequate justification. Legal
> process has gone forward, but it has done nothing to satisfy the
> Fourth Amendment's probable-cause requirement. And for that
> reason, it cannot extinguish the detainee's Fourth Amendment
> claim—or somehow, as the Seventh Circuit has held, convert that
> claim into one founded on the Due Process Clause . . . If the
> complaint is that a form of legal process resulted in pretrial detention
> unsupported by probable cause, then the right allegedly infringed
> lies in the Fourth Amendment. For that reason, and contrary to the
> Seventh Circuit's view, Manuel stated a Fourth Amendment claim
> when he sought relief not merely for his (pre-legal-process) arrest,
> but also for his (post-legal-process) pretrial detention.

*Manuel,* 137 S. Ct. at 916.

There are genuine issues of material fact regarding whether Osborn and Henggeler took

action that set events in motion that they knew or should have known would cause Hasse to be

arrested without probable cause.  Osborn, Henggeler, and the Commissioners developed a plan to

discredit Hasse at a public meeting.  Facts, ¶¶ 7-9.  Osborn then had Hasse arrested and removed

from the hearing room when she tried to defend herself, while Henggeler sat by passively and gave

his approval.  *Id*.  Osborn provided Toth with false information to establish probable cause for

Hasse's arrest.  *Id*. at ¶ 24.

Officer Toth arrested Hasse knowing that he did not witness her commit a crime.  The

arrest was based on information Toth obtained from Osborn and a plan coordinated by Henggeler.

Hasse's subsequent false imprisonment flowed directly from these actions.  Accordingly, summary judgment regarding Plaintiff's federal and state law claim for false arrest and false imprisonment should be denied as to Toth, Hennggeler, and Osborn.

**4.     A reasonable juror could find that Hasse did not receive a prompt determination of probable cause to support her post-arrest detention.**

An arrested individual has a constitutional right to a prompt probable cause determination by a neutral magistrate.  *See, Gerstein v. Pugh*, 420 U.S. 103, 125 (1975).  An arresting officer's determination of probable cause justifies only a "brief period of detention to take the administrative steps incident to arrest."  *Id.* at 144.  The Supreme Court explained the rationale for this right:

> [A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest.  Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate . . . while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest . . . . When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty.

*Gerstein*, 420 U.S. at 113-14.

*Gerstein* strikes a "practical compromise" between the rights of individuals and the realities of law enforcement.  Under *Gerstein*, "warrantless arrests are permitted but persons arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause."  *County of Riverside v. McLaughlin*, 500 U.S. 44, 55-56 (1991) (citing *Gerstein*, 420 U.S., at 125).  In this context, "prompt" means within 48-hours:

> … a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein* . . . Where an arrested

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT - 15**

> individual does not receive a probable cause determination within
> 48 hours, the calculus changes.  In such a case, the arrested
> individual does not bear the burden of proving an unreasonable
> delay.  Rather, the burden shifts to the government to demonstrate
> the existence of a bona fide emergency or other extraordinary
> circumstances.  Nor, for that matter, do intervening weekends.

*McLaughlin*, 500 U.S. at 56-57; *see also, United States v. Jernigan,* 582 F.2d 1211, 1213–14 (9th

Cir.), *cert. denied,* 439 U.S. 991 (1978).

Hasse was arrested at approximately 9 p.m. on Thursday, October 9, 2014, and was

detained until the afternoon of October 16, 2014.  *See*, Facts, ¶¶ 19, 36.  Hasse's appearance before

Judge Lee on Friday, October 10, 2014 (the day after her arrest) did not satisfied her right to a

prompt determination of probable cause because the purpose of that appearance was not to

determine probable cause, but to coerce completion of the jail's booking procedures.

Audio recordings make clear that the hearing was prompted by a call from the jail staff that

they had someone in custody who had not completed the booking process.  Facts, ¶ 30-32.  Judge

Lee explained that he was not engaged in a probable cause determination:

> Judge Lee:  Because you are booked into the jail doesn't mean the
> arrest was even valid all it means is an officer brought you to the jail
> claiming you have violated the law in some particular way.  The
> officer subjectively must believe that or he or she would not have
> brought you to the jail.  I don't know anything about that.  I haven't
> seen any reports about that.  I do have a citation but I don't, I haven't
> really been through that.  I say not really, I haven't been through it
> at all.  I have been doing sentencings this morning.

*Id*.  While Judge Lee technically did not order Hasse to comply with the booking process (*id*.), he

used the threat of jail over the three-day weekend to coerce completion of the booking process:

> . . . until you comply I can't arraign you and the unfortunate
> consequence of that is you would remain in jail . . . I'm not ordering
> you to comply per se.  I am hoping that you will comply . . . So we'll
> see you at 1:30 if you comply.  If you don't I suppose I'll talk to you
> on Tuesday.  We have a holiday unfortunately on Monday.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**- 16**

*Id.* Judge Lee did not make a probable cause determination until the following Tuesday, five days after Hasse's arrest. Facts, ¶ 33. While Judge Lee suggests he may have made a probable cause determination on the afternoon of October 10, 2014, it is not supported by the audio recording. *Id.* Because Hasse did not receive a prompt determination of probable cause, summary judgment is improper.

**5.     Payette County policy, practice or custom caused the violation of Hasse's Fourth Amendment right to a prompt determination of probable cause.**

A municipality is liable for constitutional violations that are caused by its own custom, policy, or practice. *See, Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690-92 (1978). It is the County's custom, policy and practice to detain prisoners indefinitely until they voluntarily submit to booking. *See*, Dkt. 35-1, pg. 13-14 (stating "Idaho Code § 20-601(5) requires that persons who refuse to submit [to] the entire booking process be held in the jail until they complete the entire process . . . That is exactly what occurred here."). The County does not dispute that this is its policy; rather, it argues its policy is justified. *Id.*

When a probable cause finding is delayed beyond 48-hours, the burden shifts to the County to demonstrate "emergency or extraordinary circumstances" that occasioned the delay. *See, Hallstrom v. City of Garden City*, 991 F.2d 1473 (1993) (citing *McLaughlin*, 500 U.S., at 56-57). Here, the County relies solely on Plaintiff's failure to complete the jail's booking procedure. Dkt. 35-1, pgs. 13-14.

The Ninth Circuit has rejected failure to comply with booking procedures as justification for delaying a finding of probable cause. *Hallstrom v. City of Garden City*, 991 F.2d 1473 (1993). In *Hallstrom*, Plaintiff was arrested without a warrant at 9 a.m., Friday. *Id.* at 1479-80. She did not receive a probable cause determination until approximately 4 p.m. the following Monday. *Id.* Hallstrom spent 79 hours in Ada County jail. *Id.* Ada County cited Hallstrom's failure to comply

with "all elements of the booking procedure . . . " to justify the delay.  *Id*.  The Ninth Circuit

rejected Ada County's argument:

> The defendants . . . appear to believe that the constitutional *duty* to
> ensure that an arrested individual receives a prompt probable cause
> hearing before a judicial officer is displaced indefinitely by the *right*
> to book arrested individuals in accordance with county policy . . .
> While the booking process itself (and its attendant fingerprinting
> and photographing) may be entirely proper, it does not trump the
> Fourth Amendment proscription against over-long detention based
> solely on a probable cause determination made by the arresting
> officer . . . Booking may not serve as a threshold condition which, if
> not satisfied, indefinitely suspends the operation of the Fourth
> Amendment.  *McLaughlin* admonishes that "the police should make
> every attempt to minimize the time a presumptively innocent
> individual spends in jail."

*Id*. at 1480-81 (citing *McLaughlin*, 500 U.S. at 58, 111 S.Ct. at 1670).

In *Hallstrom*, the Ninth Circuit noted several options Ada County could have used to avoid

prolonged incarceration: booking over the Plaintiff's objections, partial booking, or "Doe"

booking.  *Id*. at 1480-81.  The Ninth Circuit also noted that much of the information necessary to

complete the booking process was discovered shortly after Hallstrom's arrest.  *Id*.

Here, Payette County made no effort to minimize the time Hasse spent in jail.  The same

alternatives available in *Hallstrom* were available to Payette County.  *See*, Facts, ¶ 26.  Much of

the information necessary to complete booking was known or reasonably available to the County

shortly after Hasse's arrest.  *See*, Facts ¶¶ 22 (Toth gathers information necessary to complete

citation shortly after arrest); 21 (Hasse informs officers of concealed weapons permit on file with

County containing identifying information, fingerprints, photograph.).  As explained by the Ninth

Circuit in *Hallstrom*:

> The question is whether the county constitutionally may "coerce"
> [the detainee] to comply with booking procedures . . . If the
> defendants wished to book her before release, among available
> options were partially booking her . . . or seeking an order from the

> magistrate directing her to comply with booking. They did not have the right to continue her detention in a "battle of wills" when the detention was allegedly based on the "position ... that she can stay there forever; she will not leave until the fingerprints are taken."

991 F.2d, at 1484.

Payette County subjected Hasse to the same unconstitutional policy of indefinite detention to coerce compliance with the booking process the 9th Circuit deemed an impermissible "battle of wills" in *Hallstrom*.  The County's right to book Hasse does not justify illegal incarceration.  This Court should deny Payette County's motion for summary judgment.

**6.     The conditions of Hasse's post-arrest confinement were unconstitutional.**

Genuine issue of material fact preclude summary judgment on Hasse's claims against the County for unconstitutional conditions of confinement.  The *Hallstrom* Court held that a person is entitled to "at least to the protection afforded pretrial detainees" both before and after a probable cause hearing is held.  *Hallstrom*, 991 F.2d, at 1485.  The Supreme Court has made clear that pre-trial conditions of confinement cannot amount to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979).  Intent to punish considers (1) whether "an alternative purpose to which [the restriction] may rationally be connected is assignable for it", or (2) whether the restriction "appears excessive in relation to the alternative purpose assigned [to it]."  *Id*. at 538.

Payette County has a policy, practice and custom of detaining arrestees indefinitely until they voluntarily submit to the booking process.  A legitimate interest in orderly booking "does not command as high a priority . . . as ensuring presence at trial or maintaining jail security."  *Id*.  Rather, a Court must analyze the government's interests in the context of the "individual and personal" due process guarantee that "mandates that an innocent person be treated as an individual human being and be free of treatment which, as to him, is punishment."  *Id*. at 584. When a county policy uses detention to coerce compliance with booking procedures "[t]he detention itself . . .

could be punishment for failing to cooperate.  Especially given the alternatives available (including booking over her objections, requesting a booking order, partial booking)."  *Hallstrom*, 991 F.2d, at 1485.  Hasse was presumptively innocent.  *See*, Facts ¶¶ 13-20.  Detaining her for five days because she would not voluntarily submit to the booking process was "excessive", especially when considering the alternatives available to effectuate booking without extended detention.

Payette County also has a policy, practice and custom of forcing compliance with the booking process by denying arrestees access to services and privileges otherwise extended to prisoners.  Facts, ¶¶ 27-28; Hasse Dec., ¶ 20, Ex. A (Grievance Forms and Responses).  Pursuant to this policy, for five days after her arrest, Hasse was denied access to clean clothes, denied access to a shower, denied an opportunity to visit or speak to her spouse by telephone, denied access to fresh air and exercise, denied access to the commissary, and was confined alone in a jail cell without access to the general prison population.  *Id*. at ¶¶ 27-28.  Her cell was filthy.  *Id*.  Through a window, male guards could watch her use the toilet. *Id*.  Under *Bell*, the excessive duration and the unacceptable conditions of Hasse's confinement create a genuine of issue of fact regarding the constitutionality of Hasse's post-arrest detention.

### C.  Fourteenth Amendment

**1.  Plaintiff's Fourteenth Amendment claim against Osborn is not barred by absolute immunity.**

Osborn's conduct is not the type of prosecutorial conduct protected by absolute immunity. "[A]bsolute immunity is an extreme remedy, and it is justified only where 'any lesser degree of immunity could impair the judicial process itself." *Lacey v. Maricopa County*, 693 F.3d 896, 912 (9th Cir. 2012) (citing *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)).  Whether immunity attaches is a question of "the nature of the function performed, not the identity of the actor who performed it." *Id*. (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).  The prosecutor "bears the burden

of showing that . . . immunity is justified for the function in question."  *Id*. (citing *Burns v. Reed*,

500 U.S. 478, 486 (1991)).

The misconduct for which Osborn should be held liable in this case involves him telling

Toth to arrest Hasse and then providing Toth with false information for Toth's probable cause

affidavit.  Coordinating the circumstances of the arrest of a citizen is not protected by absolute

immunity: "giving legal advice to police, including advice as to whether there is probable cause to

arrest a suspect, is not a function protected by absolute immunity.  The mere rendering of legal

advice is not so closely connected to the judicial process that litigation concerning that advice

would interfere with it."  *Lacey*, 693 F.3d at 914 (citing *Burns*, 500 U.S. at 493-96).  "[I]t is

incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the

police, but to allow police officers only qualified immunity for following the advice."  *Id*.

Osborn worked with the Commission to discredit Hasse publicly.  Facts, ¶¶ 8-9.  He

coordinated her arrest at a public meeting.  *Id*. at ¶¶ 15, 18.  After her arrest, Osborn provided false

information to the arresting officer to substantiate the charges to be brought against Hasse.  *Id*. at

¶ 25.

As the Ninth Circuit explained in *Lacey*:

> When a prosecutor orders or counsels warrantless arrests, he acts
> directly to deprive someone of liberty; he steps outside of his role as
> an advocate of the state before a neutral and detached judicial body
> and takes upon himself the responsibility of determining whether
> probable cause exists, much as police routinely do. Nothing in the
> procuring of immediate, warrantless arrests is so essential to the
> judicial process that a prosecutor must be granted absolute
> immunity.

693 F.3d at 914.  Coordinating an effort to publicly discredit a citizen and then providing false

information to an arresting officer is not a prosecutorial function that is entitled to absolute

immunity.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT - 21**

**2.     Genuine issues of material fact preclude summary judgment as to Plaintiff's Fourteenth Amendment claim and state law claims for malicious prosecution.**

Malicious prosecution under section 1983 and state law both require a prosecution without probable cause and with malice.  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).  Both exist in this case.  Hasse was prosecuted for trespass (section 18-7008) and resisting and obstructing (section 18-705).  After Hasse's arrest, Osborn provided false information to officer Toth that was included in the probable cause affidavit regarding trespass.  Facts, ¶ 29.  Because the trespass probable cause affidavit contained false information, a jury could determine that Hasse's prosecution for trespass was without probable cause.

As to resisting and obstructing, the video of Hasse's arrest shows an upset, yet compliant, citizen.  Osborn instructed Toth to add an obstruction charge when Hasse failed to provide the information Toth needed to cite Hasse after her arrest, even though Toth had information required to complete Hasse's citation.  Facts, ¶¶ 23-25.  The trespass probable cause affidavit contained false information, the video of Hasse's arrest shows no resistance, and Toth had access to the information needed to complete Hasse's citation. Hasse's criminal case resolved with a letter of apology for "speaking out of turn."  *See*, Warden Dec., ¶ 17, Ex. 19 (Letter of Apology).  A reasonable juror could find that none of these charges were supported by probable cause.

There are also sufficient facts to give rise to a genuine dispute regarding whether Osborn was motivated by malice.  Osborn recommended that the Commission seek to have Hasse prosecuted for felony perjury prior to her arrest.  Facts, ¶ 9.  When Hasse attempted to defend herself during the meeting, Osborn immediately called for Hasse's removal, and directed Toth to arrest her.  *Id*. at ¶¶ 14, 17.  He provided Toth with false information to establish probable cause for Hasse's arrest.  *Id*. at ¶¶ 23-25.  He expressed enthusiasm when Toth agreed to add an additional charge of obstruct and delay upon his recommendation.  *Id*.  Osborn initiated the prosecution

against Hasse.  Warden Dec., ¶ 14, Ex. 15 (Case History).  That Osborn moved to assign Hasse's prosecution to another prosecutor (*See*, Dkt. 35-1, pg. 14-15) does not foreclose Hasse's claim for malicious prosecution, particularly since the matter was resolved in Hasse's favor with the prosecutor requiring only that she write a letter of apology.  For these reasons, summary judgment as to Plaintiff's state law and federal claims for malicious prosecution should be denied.

### D.  Other State Law Claims

**1.    Idaho Code § 6-610 does not bar Plaintiff's state law claims against Osborn or Toth.**

Idaho Code § 31–3220, allows the waiver of costs, fees or security in light of financial hardship.  *See,* I.C. § 31–3220; *see also*, Memorandum Decision and Order, Dkt. 16.  This Court has found that section 31-3220 applies to the bonding requirement of section 6-610.  Dkt. 16; *see also, Taysom v. Bannock County,* 2012 WL 397734 (D. Idaho Feb. 7, 2012).  On May 17, 2016, this Court exercised its authority under section 31-3220 and entered an Order requiring the Plaintiff to set a reduced bond based on the Court's informal inquiry into the Plaintiff's indigency status.  Dkt. 16.  Reduced bond was posted by the deadline set forth in the Court's May 17, 2016, Order.  Because the requirements of section 6-610 have been satisfied in this case, Plaintiff's state law claims against Toth and Osborn are not barred.

**2.    Genuine issues of material fact preclude summary judgment on Plaintiff's state law claim for intentional infliction of emotional distress against Toth and Osborn.**

In support of Defendants' request for summary judgment as to Plaintiff's claim for intentional infliction of emotional distress ("IIED"), Defendants recite a variety of arguments previously addressed (i.e. failure to post bond, no evidence of malice under section 6-904, lack of a Fourth Amendment violation, and qualified immunity).  For the reasons previously stated, summary judgment on these grounds should be denied.

Defendants further argue that Plaintiff cannot show extreme or outrageous conduct.  Dkt. 35-1, pg. 19.  Osborn and Toth caused Hasse to be arrested without probable cause for defending herself from a coordinated attack on her credibility.  Then, fabricated information to support a probable cause affidavit was used to justify Hasse's subsequent detention and prosecution.  A reasonable juror could determine that it is extreme and outrageous for officers of the law to fabricate information upon which a court will rely to incarcerate a citizen.

Beyond that, the conditions of Hasse's incarceration—in addition to being unconstitutional—were disgusting:  a grandmother in her late fifties was made to spend five days in a filthy jail cell, alone, while male guards could watch her every move—including using the toilet—through a window.  She was not allowed to speak to her husband, to have clean clothes, a shower, or fresh air.  She was prosecuted for trumped up charges that were ultimately dismissed.

The emotional distress Hasse suffered during her incarceration and after her release was severe.  *See*, Facts, ¶¶ 24, 37.  A concerned citizen has become so fearful of engaging in public discourse that she has stopped engaging in her community for fear of retaliation.  *Id.*  For these reasons, Defendants request for summary judgment as to Plaintiff's claim for IIED should be denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied.

DATED this 1ˢᵗ day of September, 2017.

FISHER RAINEY HUDSON

*/s/ Nicholas Warden*
Nicholas Warden – Of the Firm
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 1st day of September 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing and a copy of this document to the following persons:

Bentley G. Stromberg
CLEMENTS, BROWN & McNICHOLS, P.A.
321 13TH St.
PO Box 1510
Lewiston, ID 83501
Fax: (208) 746-0753

_/s/ Nicholas Warden_
Nicholas Warden – Of the Firm
Attorney for Plaintiff