# Exhibit 2
# Part 1




***Payette County Planning and Zoning***
**September 11, 2014**

**VIEWING MEETING**

There was a viewing planned on Tuesday, September 9, 2014 as prescribed in the agenda. The following members attended: Chad Henggeler, Pete Morgan, Mike Shoemaker, Randy Frates, Mary Cordova, Jennifer Riebe, and Frazer Peterson. Also attending were P&Z Administrator Patti Nitz and P&Z Administrative Assistant Mark Harvey.

During the luncheon meeting, held at Jimbo's Restaurant in Payette, Henggeler and Nitz discussed the recommendation from P&Z Attorney Bert Osborn to hold public hearings for Alta Mesa's applications for a conditional use permit, comprehensive plan amendment and rezone at the same meeting. Henggeler mentioned in the past they would have been held on separate hearing dates. Nitz said Osborn told her the City hears applications like this all in one hearing date. She noted the packets for the three hearings look ominous, but the supporting documents for all three applications are pretty repetitive with the exception of the narratives. Nitz asked if Henggeler would like County Engineer Elwin Butler to attend the meeting on Thursday evening. Henggeler responded yes, the County Engineer has been part of meetings like this in the past. There was some discussion regarding the picture of a facility similar to what Alta Mesa is proposing and the computerized drawings in the packets.

Henggeler inquired about David Richey's transfer of development right application. Nitz said Richey has applied for a variance.

Henggeler commented the other applications to be considered are for a meat cutting business and a landing strip. Nitz concurred.

Harvey and Nitz talked about the possibility of investing in computerized tablets for the Commission to use in the future to save on the cost of ink and paper. Nitz said Building Official Dwayne Holloway informed her Fruitland P&Z Commission recently started using tablets and she is waiting to see how well they work for that Commission. Harvey briefly described how the tablets would be used and what the Commission would be able to access. Peterson mentioned a program he uses in his appraisal business that types what he says and then reads it back to him. Riebe asked if the program was fairly accurate. Peterson responded it does not miss much. Riebe wondered when the County might start using tablets. Nitz replied not before

the next budget year because the budget for the upcoming year is already set. Morgan mentioned corrections would be easy to make using the tablets. Henggeler agreed, but said he still prefers to read things on paper rather than looking at a screen. Morgan noted it is easier to go back through pages when they are on paper.

Riebe discussed the proposed sound ordinance, saying Beau Ziemer had located information indicating noise levels for gas facilities are federally regulated. However, Alta Mesa Attorney Mike Christian told Riebe federal regulations only come into play if the gas crosses state lines and everything Alta Mesa is doing at this point is within the State of Idaho. Riebe said she did what she could to pull together ordinances from other places and prepared a document for the Commission to review and discuss. Nitz commented the document appears to address more than just noise regulations. Riebe agreed, saying it makes sense to include other requirements for the processing facilities. Nitz asked if Riebe's intent is to add a compressor station section to the County's gas ordinance. Riebe responded she thinks the ordinance needs to cover everything. Nitz wondered about some things being duplicated and said the Commission may need to consider amending the current ordinance in some areas to avoid duplication. Henggeler commented it would be cleaner to have it all in an ordinance dealing with post-extraction. Riebe said her research found most areas using a decibel level of 55 during the day and 50 at night or basing noise levels on the ambient noise in an area. She favors giving the applicant the option to either comply with the set decibel level or completing a noise study to establish the ambient noise level and basing the noise restriction on that ambient noise level. She mentioned applicants for facilities in outlying areas like Little Willow could request a waiver. Henggeler agreed. Peterson remarked about how quiet 55 decibels is, explaining he measured 55 decibels on a recent camping trip when no one else was even around. Riebe stated the idea is to keep the noise level low enough that the noise is not noticeable. The group continued discussing the merits of implementing a noise ordinance specific to the gas industry since their facilities can be allowed in any zone through a conditional use permit.

Peterson inquired about the appeal of the conditional use permit approval for the Kovick's event center. Nitz replied the Board overturned the Commission's approval. The Kovicks will be allowed to hold the pumpkin patch this year only, but no other events outside of family and friend gatherings will be allowed. Morgan commented about the neighbor raising pigs on his property. Henggeler noted that property is not part of the subdivision and is zoned for agricultural use. Nitz said

the County's ordinance for residential zoning allows for growing crops, but it does not allow for selling the crops from a residential parcel. Nitz commented it looks like the Kovicks may appeal the Board's decision, and they are also considering applying to rezone the property to ag.

Peterson mentioned a discussion in the Board's minutes about the P&Z Commission viewing properties. Nitz explained the Board asked why the Commission was continuing with property viewings when Prosecutor Anne-Marie Kelso had said they should not be done. Nitz told the Board the feedback she received from Bert Osborn and Commission members was that the viewings are a very important tool in the Commission's decision-making process and that Osborn and Henggeler wanted to meet with the Board and Kelso to discuss continuing the viewings. Nitz knew such a meeting would not be held for a few months due to the health issues of Kelso's daughter, so she purchased a recorder and has been recording the luncheon meetings, as suggested by Osborn. She asked the Board to give her a definite decision prior to today's meeting and the decision was to continue the viewings on a case by case basis. Nitz explained the Board thinks the viewings are very important for applications that are contentious, but could be foregone in other instances, especially if the Commission members are familiar with the property involved.

Following lunch, Henggeler, Morgan, Shoemaker, Cordova, Riebe, Peterson, Nitz and Harvey visited the properties pertaining to the applications that will be considered at Thursday's hearings except the Richey property, which was viewed in August.

At the Johnson property, Nitz identified the parcel being discussed and the approximate location of the requested landing strip.

At the Green property, Harvey identified the parcel being discussed and the planned location for the meat cutting facility. Access to the proposed facility was discussed and Nitz reported the applicant has already contacted Idaho Transportation Department.

At the Fisher property, Nitz identified the parcels being discussed and Harvey identified the approximate location of the planned access road. He pointed out the work currently being done for the pipeline that is going in. Nitz identified the neighboring residences that were discussed at the Technical Review Meeting.

**REGULAR MEETING**

The regularly scheduled meeting of the Payette County Planning and Zoning Commission was called to order on Thursday, September 11, 2014 by Commission Chairperson Chad Henggeler at the Payette County Courthouse.

**Members Present:** Frazer Peterson, Mary Cordova, Randy Frates, Pete Morgan, Mike Shoemaker, Jennifer Riebe and Chad Henggeler.

**Others Present:**

| | |
|---|---|
| Zoning Administrator: | Patti Nitz |
| Zoning Admin. Assistant: | Mark Harvey |
| Attorney: | Bert Osborn |
| SWDH: | Not Present |
| County Engineer: | Elwin Butler |

**Public Present:** Jerry Foster, Molly Foster, Randy Kauffman, Thana Kauffman, Bob Hatfield, Ronda Louderman, Matthew Green, Dale B. Williamson, Thomas R. Cope, Debra A. Cope, David Richey, Brenda Anderson, Marie Langley, Alvie Johnson, Ryan Henggeler, David Levanger, Tina Fisher, Sharon Worley, Dusty McDaniel, Dick Fisher, Susan Fisher, Jon Skinner, Farrell Rawlings, Ken Smith, Pat Smith, JoAnn Higby, Michele McDaniel, Michael Christian, John Peiserich, John Foster, Debbie Buchlke, Levi Huntsinger, Kasey Ketterling, Alma Hasse, Dale Miller, Pete Eromenok, Dennis Campo, Patrick Colwell, and Danny Bicandi.

The minutes from the August 14, 2014 meeting were approved as presented.

---

**NEW BUSINESS:**

1. **VARIANCE (Lot Size) & TRANSFER OF DEVELOPMENT RIGHT** [TDR] for property located at or near 7920 Richey Road, Fruitland, ID and owned by David & Nancy Richey.

   The **"Receiving"** property is described more specifically: A portion of land in Sec. 23, T.8N, R.5W, Block 7S, Boise Meridian, Payette County, ID. [Tax Parcel 1999, to be segregated off] Owned by David & Nancy Richey.

   The **"Sending"** property is described more specifically: A portion of land in Sec. 23, T.8N, R.5W, Block 7N, Boise Meridian, Payette County, ID. [Tax Parcel 1999] Owned by David & Nancy Richey.

David Richey, 7920 Richey Road, Fruitland, Idaho was sworn in by Mark Harvey. Richey pointed out the receiving property was surveyed and prepared for this process in 2006. He is requesting a variance to allow a development right to be transferred to the lot that is slightly less than one acre, which does not meet the Payette County Code requirement of a minimum of two acres in a City impact area. He explained between the two adjacent parcels he owns there were a total of four development rights. One right was used to construct his current home and two rights were used to build the homes on the property adjacent to his home site property, leaving one development right yet to be used. He is requesting to transfer the remaining right from his home site parcel to the adjacent parcel to allow a third home to be built on that parcel. Richey explained the strip of property where the two homes sit and where the third lot is located irrigate just the opposite of the rest of his farm land. He also said it was difficult to use farm equipment to raise a crop on this strip of land due to its size, making this area a logical place to use the development rights.

Morgan mentioned the City of Fruitland recommended this should go through the subdivision process rather than be done through a transfer of development right. Richey responded most subdivisions require public water and sewer, which are not available at this location. He suggested the word subdivision is used to describe anything from what he is proposing here to a fully developed site with paved streets, sidewalks, and public water and sewer systems. He said the real thing is the transfer of ownership and the guarantee that there is a defined piece of property to transfer from one owner to the next, which has been done here by having the property surveyed.

The hearing closed at 7:08 p.m.

2. **CONDITIONAL USE PERMIT-MEAT CUTTING BUSINESS** by Matthew Green for property located at or near 6415 Hwy 52, New Plymouth, Idaho and owned by Matthew Green.

   The property is described more specifically:
   A portion of land in Section 18 T.7. R.3W Boise Meridian, Payette County, Idaho. [Parcel 6243]

Matthew Green, 6415 Hwy. 52, New Plymouth, Idaho was sworn in by Mark Harvey. Green stated he would like to put in a custom meat cutting facility on his property. He would have a mobile custom truck that will go to a farm, process the animal into a carcass at the farm, haul the carcass to the meat cutting shop

and store them in the cooler until they are ready to be processed. Once they are processed, the packages of meat will be frozen and the customer will pick up their meat. Green said he has already contacted the people who pick up the waste from the carcasses. The waste will be picked up the same day the carcass is processed, with everything being kept inside the facility or the mobile truck until it is picked up for disposal. Green, who has been in the business since 1982, has had two custom meat shops in Oregon previously, so he knows what has to be done in regards to sanitation. He declared that is a very big deal in this type of business. He has been in contact with the State in regards to signage. Access to the business will be through Green's current driveway. Green said he has contacted the Health Department about putting in a separate septic system for the business. Idaho Power has assured Green the power he will need for the business can be supplied. Green testified water for the business will come from his existing well, and acknowledged the water will have to be tested and some type of filter system may have to be installed. He anticipates ten customers per day accessing the business site at the most, and the mobile truck will come in and out once a day. Green said the business will be inspected for sanitation by the State routinely. He commented the outside of the business building will match his house and outbuildings.

Riebe asked how disposal is handled. Green responded he will be on a regular pickup schedule with a company in Kuna that handles the waste disposal for meat cutting businesses. Everything will be picked up the same day Green does the processing. Green said no waste is kept outside the building, so it will not create an insect problem. Riebe asked if the same is true for the mobile butcher part of the business. Green replied everything is kept inside the truck until the waste disposal company picks it up. He clarified there is a partition inside the truck where the offal is kept enclosed.

Peterson wondered if Green would be processing wild game. Green answered he would. Peterson asked if Green's prior meat cutting businesses were located in a commercial or industrial zone. Green responded one was in a residential area, one was in the middle of town, and one was outside of town. He said he purchased existing businesses before, so this is the first one he will build himself. Green explained the regulations that have to be followed are the same regardless of where the business is located. Peterson inquired about hours of operation. Green replied Monday through Saturday, with hours of 8:00 a.m. to 5:00 p.m. Monday through Friday and half day on Saturday.

Cordova asked how wide the Green's private lane is. Green answered he did not actually measure it, but he thinks it is a good 25 feet wide. Cordova inquired about the length of the access from where it leaves the State highway back to the proposed building. Green again said he did not measure the length, but he thinks it is about 200 feet. Cordova asked if Green plans to improve the access. Green responded yes, it has to have an all-weather surface and he will lay gravel.

Riebe inquired about plans for employees. Green replied there will be two wrappers and two meat cutters to start with, and others could be added as the business grows. He expects this to be like a "mom and pop" operation and said if it ever gets big he will find a more appropriate facility to move the business to.

Henggeler asked about the easement for the drain ditch. Green responded it is 50 feet from the center of the ditch.

Frates wondered how Green chooses a particular day to process the meat. Green answered this is handled through scheduling. He reiterated customers will not bring their animals to the facility to be slaughtered, so when the customer calls in to have an animal butchered it will be scheduled in on a butcher day. This allows Green to coordinate with the people who pick up the offal to be there the same day to pick up the waste. Frates asked how many dead animals Green can haul in his truck. Green said five to six animals at a time, depending on the size of the animals.

The hearing closed at 7:22 p.m.

3. **CONDITIONAL USE PERMIT-LANDING STRIP** by Alvie Johnson for property located at or near 3590 NW 1st Avenue, New Plymouth, Idaho and owned by Alvie Johnson. [Parcel 1482]

   The property is described more specifically:
   A portion of land in Section 32 T.8N R.4W, Boise Meridian, Payette County, Idaho.

Alvie Johnson, 3590 NW 1st Avenue, New Plymouth was sworn in by Mark Harvey. Johnson testified he would like to locate a landing strip on his property for his own private use. He indicted on a map the landing strip would be located on the extreme left side of his property. The landing strip would be approximately 1000 feet long from the north edge of the property to the south and about 35 feet wide, occupying about 4/5 of an acre on Johnson's 12.45 acre parcel. Johnson said this would be for his own recreational use. He anticipates using the strip about every other day, depending on weather

and flying conditions.

Morgan inquired about Johnson's flying experience. Johnson replied he has been flying since 1964. He flew for the Air National Guard for about 20 years and he flew for a commuter airline from Boise to Portland and back. Since about 1980 Johnson said his flying has just been for recreation. He stated he built his airplane that he will be flying.

Riebe asked if Johnson would store his airplane at this location. Johnson answered he would. He explained he is in the process of building a shop on his property that the plane would be stored in if this landing strip is approved. His plane is currently housed at the Ontario, Oregon airport. Riebe questioned the 1000 feet being long enough for taking off and landing. Johnson responded his plane has a short field capability and, depending upon temperature and other conditions, he can take off in 300-400 feet. Riebe asked if Johnson has to take off to the north. Johnson answered he does because of the trees and the power lines at the south end of the property.

Shoemaker wondered what would happen if the neighbor to the north put a structure at the end of the landing strip. Johnson replied that would be a problem. He pointed out the area is cultivated fields and he does not anticipate anything being built.

Peterson commented part of flight training is learning to take off with a 50-foot obstacle. He asked if someone built a 50-foot high structure at the end of the landing strip, would 1000 feet still be within the capability of Johnson's aircraft. Johnson answered taking off to the south with a 300-400 foot length required to be airborne, he should be a couple hundred feet in the air by the time he reaches the end of the landing strip.

Frates asked if Johnson's main reason for requesting the landing strip is convenience. Johnson said absolutely. Frates commented there probably is not a lot of cost involved in putting in a grass runway. Johnson responded there would be some cost in getting the land leveled. He pointed out part of the area is planted in lettuce seed, so he would have to get the corrugations taken out. He would also put in some sod and a sprinkler system for the landing strip. Frates asked if Johnson flies in the winter months. Johnson replied no, this is strictly recreational flying and his plane does not have the instruments needed for instrument flying. He remarked if you see blue sky you can fly.

Farrell Rawlings, 6301 Adams Road, New Plymouth was sworn in by Mark Harvey. Rawlings said he lives about three-quarters of a mile from this property as the crow flies and he is opposed to the landing strip that has been requested. Rawlings remarked this is prime ag ground and, even though Johnson testified it would not take much ground, Rawlings is concerned about setting a precedence. He said he is not concerned about dust since Johnson plans to put in grass. Rawlings voiced concern about the lack of EMS and fire services, especially since Johnson's plane has no instruments. He also talked about the danger of interfering with crop dusters in the spring and the summer. Rawlings emphasized the importance of supporting the local airports at Ontario and Payette.

Morgan commented Johnson could grow grass for a horse, which is an ag use but would still take the land out of crop production. He also pointed out the response time for EMS would be the same if Johnson had an accident on his horse. Rawlings responded he does not see that riding that horse would interfere with spraying and some of the other ag related things being done in the area.

Peterson mentioned Johnson's plane does not have flight instruments that would allow him to fly in the clouds where he cannot see the ground, but it does have a radio to communicate with other planes.

Pat Smith, 3642 NW 1st Avenue, New Plymouth was sworn in by Mark Harvey. Smith testified she lives next door to Johnson's property. She is concerned about whether this is a private landing strip or if others would be allowed to land and take off. She said two of her other neighbors have been granted conditional use permits and she is concerned about changing the agricultural setting of the area. Smith asked if there is a noise level she needs to be concerned about.

Alvie Johnson addressed the issues that were presented. He clarified his airplane does not have instruments that would allow him to fly in the clouds, which is not done in recreational flying. He testified flying in and out of the proposed landing strip would be no different than flying in and out of the Ontario airport. He said the Ontario airport is considered an uncontrolled airport, which requires pilots to communicate with each other by radio to announce where they are. In regards to noise, Johnson said his airplane is not as noisy as the crop dusters, and he does not think it makes excessive noise. He affirmed this would be a private airstrip for his own use. Responding to concerns about taking ag ground out of production, Johnson explained he has removed some outbuildings and some of that land will be returned to crop